IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEVAUN GREEN, SR.,** : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 24-5075 |
| **SCHOOL DISTRICT OF** : | |
| **PHILADELPHIA,** : | |
| : | |
| Defendant. : | |
| : | |

**Perez, J.**                                                                                                          **January 13, 2026**

## MEMORANDUM

Pro se Plaintiff Kevaun Green, Sr. asserts a variety of claims stemming from the School District of Philadelphia's (the "District") failure to provide his son, K.G., a student with a disability, with transportation to and from school. The Court previously granted the District's motion to dismiss in part, but allowed Plaintiff's state statutory and common law claims, as well as his claims arising under the Individuals with Disabilities Education Act ("IDEA"), the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504") to proceed. Plaintiff now seeks leave to file an amended complaint asserting eleven counts: IDEA (Count I); Section 504 (Count II); the ADA (Count III); Equal Protection (Count IV); procedural due process (Count V); substantive due process (Count VI); municipal liability under *Monell v. Department of Social Services* (Count VII), state tort law (Count VIII), state contract law (Count IX), and the Pennsylvania Human Relations Act ("PHRA") (Count X). The proposed amended complaint also includes a claim for punitive damages (Count XI) and seeks to add six District employees ("Individual Defendants") in their individual and official capacities.

1

The District agrees that amendment is proper as to Plaintiff's claims arising under the ADA, Section 504, and the PHRA. Leave to amend Counts II, III, and X is, therefore, granted. But the remaining claims would not withstand a motion to dismiss, so leave to amend Counts I, IV through IX, and XI is denied.

## I. Background[1]

K.G.[2] is a minor child with autism and multiple serious health conditions. ECF No. 14 at 3. K.G. was a student in the District between 2020 and 2023 with an Individualized Education Plan ("IEP"), which required the District to provide transportation for him to and from school. *Id.* at 4. The District regularly provided unsafe transportation or provided no transportation at all. *Id.* As a result, K.G.'s father ("Plaintiff") became the sole transportation provider for K.G., and K.G. frequently missed school or was tardy. *Id.* at 4–5. Because K.G. was often late or absent, the District treated him as truant and repeatedly changed his placements. *Id.* at 5. In 2023, the District assigned K.G. to a school located approximately 75 to 90 minutes away. *Id.* On September 8, 2023, the District disenrolled K.G. based on attendance. *Id.*

At some point, K.G. attended an out-of-district school where the nursing staff was incapable of treating K.G.'s medical needs. *Id.* at 5. K.G. has a G-tube that sometimes became dislodged and needed to be reinserted immediately or K.G. would suffer severe pain and require emergency room care. *Id.* The out-of-district school staff would not reinsert the G-tube and would, instead, call Plaintiff to leave work, drive to the school, and reinsert it himself. *Id.*

---

[1] These facts are taken from the proposed Amended Complaint, ECF No. 14, and are accepted as true for purposes of these motions.

[2] In the original, handwritten complaint, the child was identified as "KJ," while the typed amended complaint identifies him as "K.G."

Plaintiff alleges that because he had to drive K.G. for all school-related travel, he had "to leave work repeatedly, lose employment opportunities, suffer job loss, and experience long-term reductions in earning capacity." *Id.* Plaintiff also suffered a slip-and-fall injury at a McDonald's near an out-of-district school during school-related travel. *Id.* at 6.

On July 31, 2024, Plaintiff filed a complaint against the School District of Philadelphia (the "District") in the Philadelphia County Court of Common Pleas. *See* Notice of Removal, ECF No. 1 at 4 ¶ 1. The Complaint was served on the District on September 12, 2024. *Id.* at 4 ¶ 2. The District removed the case to this Court on September 24, 2024, based on federal question jurisdiction, *id.* at 5 ¶¶ 4–5, and moved to dismiss the Complaint on October 2, 2024, ECF No. 3.

On November 3, 2025, this Court granted in part and denied in part the District's Motion to Dismiss. ECF No. 11. Specifically, the Court dismissed without prejudice the federal constitutional claims and "bodily injury" and "slip and fall" claims and dismissed with prejudice the state constitutional claims, claims for punitive damages against the District, and claims for damages arising from a lack of transportation after K.G. moved out of the District. ECF No. 11. On November 18, 2025, the District answered the complaint. ECF No. 12. Thereafter, Plaintiff moved for leave to file a first amended complaint, ECF Nos. 13 & 16, filed a proposed amended complaint, ECF No. 14, and moved to strike the affirmative defenses in the District's Answer, ECF Nos. 17 & 18. Those motions have been briefed and are ripe for review.

II. **Legal Standard**

"The court should freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may deny leave to amend if the proposed amendment would not withstand a motion to dismiss. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must

3

contain sufficient factual material that, when accepted as true and considered in the light most favorable to the plaintiff, states a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations and "formulaic recitation[s] of the elements of a cause of action" are insufficient and may be disregarded. *Id.* at 555. Additionally, a court must dismiss a claim for which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

### III. Discussion

#### A. Count I: IDEA

Plaintiff alleges the District's failure to provide transportation to K.G. deprived him of a FAPE, in violation of the IDEA. As a remedy, he seeks, *inter alia*, compensatory education, reimbursement of expenses, and declaratory relief. ECF No. 14 at 7. The District argues Plaintiff cannot bring a claim under the IDEA because he did not exhaust his administrative remedies. *See* ECF No. 20 at 9. This Court agrees.

The IDEA requires states to provide specific "procedural safeguards to ensure children with disabilities and their parents are provided with due process." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014). This is the IDEA's administrative process, through which parents may request a due process hearing seeking relief from a school district for failing to provide a FAPE. *See id.*; *Courtney T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 240 (3d Cir. 2009). In Pennsylvania, these claims are first heard before a hearing officer chosen by the Office for Dispute Resolution ("ODR"). *Courtney T.*, 575 F.3d at 240 n.1. Parents who disagree with the hearing officer's decision may then appeal to an ODR-selected appellate body. *Id.* Generally, only after each of these steps is completed may parents appeal to federal district court. *Id.* In other words, completion of these steps—*i.e.*, exhaustion of the IDEA's administrative procedures—"is required in order for the [IDEA] to grant subject matter jurisdiction to the district court." *Batchelor*, 759

F.3d at 272 (cleaned up); *see also* 20 U.S.C. § 1415(i)(2)(A) ("Any party aggrieved by the findings and decisions made [by the administrative agency] . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in . . . a district court of the United States . . . .").[3]

Here, Count I raises a violation of the IDEA and seeks remedies available under the statute. Plaintiff has not alleged he exhausted his administrative remedies. Therefore, the Court lacks subject matter jurisdiction over this claim and must deny leave to amend.

### B. Counts IV, V, and VI: Federal Constitutional Claims Against Individual Defendants

Counts IV, V, and VI raise an equal protection claim, a procedural due process claim, and a substantive due process claim, respectively. To hold state actors liable for constitutional violations, a plaintiff must rely on 42 U.S.C. §1983. To state a §1983 claim, a plaintiff must plead (1) a violation of a constitutional right (2) "committed by a person acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citation omitted). Furthermore, to hold an individual liable under §1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiff has identified no individual actions undertaken by any Individual Defendant. The proposed amended complaint mentions each individual only once—when

---

[3] There are some exceptions to the exhaustion requirement where, for example, pursuing the administrative procedures would be futile. *See Batchelor*, 759 F.3d at 280. But there is nothing in the Amended Complaint or Plaintiff's briefing that would support a finding of futility. Plaintiff argues administrative exhaustion should not apply because he seeks compensatory damages, which are unavailable under the IDEA. ECF No. 21 at 6. But that does not mean his IDEA claim may proceed; rather, it supports an argument the District did not make with respect to related claims under the ADA and Section 504. *See Batchelor*, 759 F.3d at 276–77 (affirming dismissal of IDEA, Section 504, and ADA claims where they all related to provision of FAPE and some of the remedies sought were available under IDEA). Plaintiff seeks compensatory education and enforcement of the IEP. *Id.* These are remedies available under the IDEA. Therefore, his IDEA claim is not exempt from the exhaustion requirement.

identifying their position as a District employee. So, the § 1983 claims as asserted against Individual Defendants in their individual capacities are legally insufficient.

There is no reason to add Individual Defendants in their official capacities because official-capacity suits are treated as suits against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (affirming dismissal of claims against public officers in official capacities because such suits are "functionally . . . suit[s] against the public entity that employs them"). Allowing amendment to add Individual Defendants in their official capacities would be redundant, and regardless, as discussed below, Plaintiff's constitutional claim against the District fails. Accordingly, leave to amend Counts IV, V, and VI is denied.

C. **Count VII: Municipal Liability under *Monell***

To hold the District liable for a constitutional violation under § 1983, the plaintiff "must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). "[M]unicipal liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (quoting *Monell*, 436 U.S. at 694). Policy is "an official proclamation, policy, or edict" issued by a decisionmaker with the requisite authority. *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). Municipal "custom" is the practice of state officials, where not authorized by law, that is "so permanent and well-settled as to virtually constitute law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (cleaned up).

6

A plaintiff may assert that a municipality's failure to train or supervise employees shows an unconstitutional custom, but he faces a high bar. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* The plaintiff must show the failure to train amounts to a deliberate indifference to an individual's constitutional rights. *Johnson v. City of Phila.,* 975 F.3d 394, 403 (3d Cir. 2020). Generally, to establish deliberate indifference, a plaintiff must show that the lack of training "caused a pattern of violations" by untrained employees, *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000), such that municipal decisionmakers were on notice of the need for training. *Johnson*, 975 F.3d at 403. If there is no identifiable pattern of violations, a plaintiff must show the need for training was "so obvious" because without it, a violation of constitutional rights was likely to occur. *Id.*

Plaintiff alleges the District repeatedly ignored complaints, denied K.G.'s transportation, and punished him for attendance issues the District created. ECF No. 14 at 6. Plaintiff asserts these were widespread practices that represent a policy or custom because the District systematically ignored transportation mandates in IEPs and assigned unsafe transportation to disabled students. *Id.* at 9–10. These allegations are conclusory. The proposed amended complaint does not establish that the District failed to provide transportation to any other student besides K.G. or that there was any system-wide practice of failing to adhere to IEP requirements.

Plaintiff also contends that the District failed to supervise, regulate, and train transportation vendors and medical staff. *Id.* at 9. But Plaintiff has not established any "pattern of similar constitutional violations by untrained employees" that would establish that a failure to train amounted to deliberate indifference. *Connick*, 563 U.S. at 61; *see also Berg*, 219 F.3d at 276. First, it is unclear how a failure to train transportation staff could have contributed to any constitutional

7

violation because the crux of the amended complaint is that K.G. was not transported by District transportation staff at all. When he was provided transportation, it was by private contractors and taxis, and while K.G. suffered emotional and psychological harm from the lack of transportation, numerous absences, and placement changes, none of that is alleged to stem from a failure to train the transportation providers. *See* ECF No. 14 at 4, 6. Second, any failure to provide medical care to K.G. occurred at an out-of-district school with non-District employees. There are no allegations supporting the inference that the District had an obligation to train out-of-district employees to provide K.G. with medical care after he left the District, nor are there any allegations that would show the District knew of a pattern of constitutional violations or the likelihood that K.G. would suffer harm such that a failure to train or supervise could amount to deliberate indifference. The proposed *Monell* claim, therefore, would not withstand a motion to dismiss, and leave to amend Count VII is denied.

### D. Count VIII: Negligence

Plaintiff's negligence claims relate to the provision of unsafe transportation, the failure to provide transportation, and the failure to provide adequate medical care to K.G. ECF No. 14 at 10. Plaintiff also seeks to hold Defendants liable for his slip-and-fall at a McDonalds during school-related travel. *Id.*

Plaintiff cannot sustain a negligence claim against the District because it is immune from liability under the Political Subdivision Tort Claims Act ("PSTCA"). "The PSTCA governs the extent to which political subdivisions . . . may be held liable in tort." *Jean v. City of Phila.*, 604 F. Supp. 3d 271, 274 (E.D. Pa. 2022). Under Pennsylvania law, municipalities, local agencies, and their employees shall not "be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.

C.S.A. § 8541; 42 Pa. C.S.A. § 8545 ("An employee of a local agency is liable for civil damages . . . only to the same extent as his employing local agency . . . .").

Although the PSTCA contains nine statutory exceptions, none apply here. *See* 42 Pa. C.S.A. § 8542 (listing categories of "negligent acts" for which a local agency may be held liable). The only arguably applicable exceptions are vehicle liability and real property. *See id.* § 8542(b)(1), (b)(3). Neither applies. Plaintiff does not allege harm resulting from the District's operation of a motor vehicle in the District's possession or control. *See* 42 Pa. C.S.A. § 8542(b)(1). And Plaintiff's slip-and-fall at a McDonalds did not occur as a result of the District's care, custody, or control of property in the District's possession. *See* 42 Pa. C.S.A. § 8542(b)(3). Accordingly, Plaintiff's proposed negligence claim against the District is barred.

Plaintiff also cannot sustain negligence claims against Individual Defendants because he has not alleged facts showing that any Individual Defendant engaged in "willful misconduct" such that statutory immunity would be abrogated. To hold a municipal employee personally liable for negligence, the complaint must contain facts showing the alleged tort involved "malicious or willful conduct." *Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 277 (E.D. Pa. 2007); 42 Pa. C.S.A. § 8550 (county employees not immune when tortious act "constituted a crime, actual fraud, actual malice, or willful misconduct"). Under Pennsylvania law, "willful misconduct is a demanding level of fault." *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006). It occurs where "the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied[,]" *i.e.*, where the plaintiff establishes "specific intent." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 287 (3d Cir. 2006) (quoting *Robbins v. Cumberland Cnty. Children & Youth Servs.*, 802 A.2d 1239, 1252–53 (Pa.

Commw. Ct. 2002)). "'[W]illful misconduct' in this context has the same meaning as the term 'intentional tort.'" *Id.* (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001)).

Here, the proposed amended complaint is devoid of any allegations that any specific Individual Defendant committed an intentional tort against K.G. or Plaintiff, or facts supporting an inference that any Individual Defendant desired that either be harmed or was substantially certain harm would result. Accordingly, the proposed negligence claim is insufficient, and leave to amend is denied.

### E. Count IX: Breach of Contract

Plaintiff asserts the District breached a contract when it failed to provide the transportation required by K.G.'s IEP. This claim would also fail because failure to adhere to an IEP cannot be grounds for a breach of contract claim. While the Third Circuit has not addressed the issue, "courts have rejected efforts to frame challenges to IEPs as breach-of-contract claims." *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 820 (9th Cir. 2007); *see also, e.g.*, *L.J. ex rel. N.N.J. v. Sch. Bd. of Broward Cnty.*, 927 F.3d 1203, 1212 (11th Cir. 2019) ("Setting out a standard under which even a *de minimis* failure to implement a particular provision of an IEP would be actionable would also be inconsistent with the recognition that an IEP is a plan, not a contract."); *Doe v. Dennis-Yarmouth Reg'l Sch. Dist.*, 578 F. Supp. 3d 164 (D. Mass. 2022) ("Most courts have rejected the argument that an IEP qualifies as a contract."); *Schafer v. Hicksville Union Free Sch. Dist.*, No. 06-CV-2531, 2011 WL 1322903, at *20 (E.D.N.Y. Mar. 31, 2011) (asserting it is a "dubious notion that a breach of contract action can arise out of an IEP dispute"); *Ms. K v. City of Portland*, 407 F. Supp. 2d 290, 301 (D. Me. 2006) ("[A]n IEP is not a legally binding contract."); *John A. v. Bd. of Educ. for Howard Cnty.*, 929 A.2d 136, 149 (Md. 2007) ("[A]n IEP is not governed by the law of contracts and is not itself a legally binding contract.").

This Court agrees and rejects Plaintiff's attempt to avoid the IDEA's administrative exhaustion requirement by framing his claim as a breach of the IEP. Leave to amend Count IX is denied.

### F. Punitive Damages

Plaintiff seeks punitive damages for his §1983 claims against the Individual Defendants in their individual capacities. Because each of Plaintiff's § 1983 claims fails and because the Complaint alleges no conduct specifically attributable to any Individual Defendant, his punitive damages claim also fails. *See supra* Part III.B.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Leave to File an Amended Complaint is granted in part and denied in part. Counts II, III, and X of the Amended Complaint, ECF No. 14, shall proceed.

An appropriate Order follows.